IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ADAM W.E. STEMMONS,

*Plaintiff*,

v.

GEORGIA CORSO,

*Defendant*.

Civil Action No. ELH-21-1035
(Related Case: Civil Action No.
ELH-21-1916)

**MEMORANDUM**

This Memorandum resolves a "Motion for Preliminary injunction and memorandum" filed by the self-represented plaintiff, Adam W.E. Stemmons. ECF 17 (the "P.I. Motion"). The P.I. Motion is accompanied by various exhibits. ECF 17-1. Plaintiff asks the Court to "block any and all evictions against Mr. Stemmons that do not deal with a complete lack of rent payment, meaning rent not paid at all or a reasonable plan for such to be made." ECF 17 at 8. The defendant, Georgia Corso, has not responded to the P.I. Motion.[1]

No hearing is necessary to resolve the P.I. Motion. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion.

**I. Procedural Background**

Plaintiff filed suit against Corso, his landlord, on May 3, 2021. ECF 1. He alleges violations of the Fair Housing Act ("FHA"), as amended, 42 U.S.C. §§ 3601 *et seq*., and the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101 *et seq*. ECF 31 at 23. Specifically, he contends that defendant has failed to accommodate his "[c]hronic form

---

[1] On the CM/ECF docket, this case is captioned "Stemmons v. Corsco." *See* Docket. But, all pleadings and filings in this case indicate that defendant's last name is "Corso." The Clerk shall correct the docket.

of PTSD," and discriminated against him because of his PTSD. *Id.* at 11. He seeks between $75,000 and $250,000 in damages. *Id.* at 25.

After plaintiff filed suit (ECF 1), he moved to amend. ECF 12. By Order of May 21, 2021 (ECF 14), I permitted the amendment, noting that the original Complaint had not yet been served. The amended complaint is docketed at ECF 15. Thereafter, plaintiff twice moved to amend his suit. ECF 20; ECF 25. Defendant filed a motion to dismiss directed at ECF 15 (ECF 21), and also responded in opposition to ECF 20 and ECF 25. ECF 26. The P.I. Motion followed on June 11, 2021. ECF 17.

On July 31, 2021, while plaintiff's motions to amend were still pending, he filed a second action against the same defendant. *See* ELH-21-1916. The Complaint in that case substantially duplicated plaintiff's most recent proposed amended complaint in this case (ELH-21-1035, ECF 25), but also added several new allegations. *See* ELH-21-1916, ECF 1. Given the similarity of the allegations, and in the interest of judicial economy, the Court issued an Order on August 4, 2021, in Case ELH-21-1035 (ECF 30), consolidating the cases under case ELH-21-1035. The Court also ordered the Complaint in ELH-21-1916 to be docketed in ELH-21-1035 as a "Supplement to the Complaint" and closed case ELH-21-1916. The Supplement to the Complaint is docketed in this case at ECF 31 (the "Supplement"). It is now the operative pleading in the case. And, in ECF 30, I ordered defendant to respond to the Supplement.

Moreover, by Order of August 25, 2021 (ECF 41), I denied defendant's original motion to dismiss (ECF 21), as moot. And, I denied plaintiff's two pending motions to amend (ECF 20; ECF 25).

As to the Supplement, defendant has filed a motion to dismiss for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B). ECF 43. For his part, plaintiff

has filed a wide variety of pleadings, motions, and other submissions throughout the course of this litigation.  Aside from the P.I. Motion, pending motions by plaintiff include ECF 47, ECF 48, ECF 49, and ECF 64.  I will address those motions in due course.

## II.  Factual Background

Plaintiff has levied a bevy of factual allegations and assertions in his submissions.  For purposes of this Memorandum, it is not necessary to review them in detail.  However, I will provide a brief overview, gleaned from the P.I. Motion, the Supplement, and other submissions in this case, as best the Court can interpret them.

In early September 2020, plaintiff began renting a property in Baltimore, owned by defendant.  ECF 31 at 10, 11.  However, he does not appear to have actually signed a lease until September 19, 2020.  *Id*. at 12; ECF 31-8 (lease excerpts) at 7.  As noted, plaintiff suffers from a "[c]hronic form of PTSD."  ECF 31 at 10.  As a result, it is important for plaintiff to stay "on a schedule" (ECF 17 at 2), and he "requires a week notice for anything."  ECF 31 at 10.  He asserts that he informed defendant of his condition before moving in, although whether, and to what extent, he did so is disputed.  ECF 17 at 2; ECF 31 at 10-11; ECF 43-1 at 2-3.

Soon after plaintiff moved in, his relationship with defendant began to deteriorate.  In particular, plaintiff asserts that defendant entered, or sought to enter, his apartment several times for various maintenance issues, without providing what plaintiff viewed as adequate notice.  *See* ECF 17 at 3; ECF 31 at 12-13.  After a back-and-forth over email between plaintiff and defendant, defendant requested a doctor's note, which plaintiff provided on October 2, 2020.  ECF 8 at 10 (the note); ECF 31 at 13-14.  The doctor's note reads, in relevant part: "Mr. Stemmons suffers from PTSD . . . and anxiety.  Because of the severity of his symptoms, Mr. Stemmons requires at least one week's notice for schedule changes and/or disruptions."  ECF 8 at 10.  Plaintiff alleges

3

that, notwithstanding this note, defendant inappropriately requested additional information from

him, and adopted a cramped interpretation of her notice obligations. ECF 17 at 3-4; ECF 31 at 13-

18. However, plaintiff's submissions are vague and unclear as to any specific incidents of

defendant actually attempting to enter with insufficient notice after the doctor's note.

The relationship between plaintiff and defendant seems to have improved by the end of

2020, but then took a turn for the worse around spring 2021, leading to the current litigation. ECF

17 at 3; ECF 31 at 17. For example, there was a dispute regarding electrical repair work, in which

plaintiff asserts he was overpaying for common area electric bills. ECF 17 at 3; ECF 31 at 16, 22-

23. According to plaintiff, the necessary work was not performed because defendant refused to

adequately accommodate his need for notice. ECF 31 at 16, 22-23.

The parties also had a dispute about the payment of rent. Plaintiff's lease provides that

although Zelle[2] is the preferred method to pay rent, rent may also be paid by money order, certified

check, or cash. ECF 31-8 at 3. However, payment in cash may only be made if defendant is

"informed ahead of time each pay period and cash is delivered by hand" to defendant. *Id*.

For June 2021, plaintiff decided that he wanted to pay his rent by check or cash, apparently

because he mistrusted defendant and did not feel comfortable using Zelle to pay her. ECF 17 at 4.

He reached out to defendant, but asserts that when she responded a week later, she insisted he pay

electronically and refused to schedule a time to meet him for a cash payment. *Id*. Defendant sent

an email to plaintiff at 6:55 a.m. on June 5, 2021. ECF 17-1. Defendant wrote: "Due to the many

upsetting arguments and heated debates you and I have had in our tenant/landlord relationship, I

will accept only electronically documented funds and the amount must be in full. I am no longer

---

[2] The Court may take judicial notice that Zelle is a service, used by many major banks, through which users can transfer money electronically, including via a mobile application. *See* Fed. R. Evid. 201; ZELLE, https://www.zellepay.com/ (last visited Feb. 2, 2021).

comfortable making physical personal contact with you." *Id.* at 3.  The email also refers to Zelle as "the least disruptive [option] to [plaintiff's] mandated schedule." *Id.*

In a subsequent email sent by defendant to plaintiff at 2:34 p.m. on June 5, 2021, defendant wrote that she was "not required to take cash," referring to it as an option that she could grant at her discretion for "tenants who request it and have no other means of payment." *Id.* at 11.[3]  She continued: "Due to your severe PTSD symptoms, admitted mental instability, the gaslighting, threats, and false accusations you have lodged at me, it is not acceptable for you to bring cash to my house." *Id.*  However, in the Supplement, which was filed on July 30, 2021, plaintiff admits that "in the last week" defendant had offered to meet plaintiff at a bank so he could pay the rent in cash.  ECF 31 at 21; ECF 31-3 (undated text message from defendant) at 2.  But, in the meantime, defendant appears to have filed a Failure to Pay Rent complaint against plaintiff.  *See* ECF 31 at 21; ECF 31-9 at 2 (complaint dated June 7, 2021).

On May 2, 2021, via email, defendant notified plaintiff that his lease with her "will not be renewed."  ECF 8 at 23.  On September 24, 2021, plaintiff submitted a change of address notification to the Court, indicating he would have a new address beginning September 28, 2021.  ECF 46.  He has since referred to his "new place" in filings.  *See, e.g.*, ECF 59 at 1.

Additional facts are discussed as relevant, *infra*.

### III. Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see Benisek v. Lamone*, ____ U.S. ____, 138 S. Ct. 1942, 1944 (2018); *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th

---

[3] The email attached to the P.I. Motion does not include a date and time, but a version of the email attached to the Supplement does. *See* 31-2 at 2.

300, 339 (4th Cir. 2021) (en banc); *Roe v. Dep't of Defense*, 947 F.3d 207, 219 (4th Cir. 2020); *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 170-71 (4th Cir. 2019); *Centro Tepeyac v. Montgomery Cty.*, 722 F.3d 184, 188 (4th Cir. 2013) (en banc). Rather, a preliminary injunction is "'granted only sparingly and in limited circumstances.'" *Micro Strategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir. 1991)). "This principle reflects the reality that courts are more likely to make accurate decisions after the development of a complete factual record during the litigation." *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 979 F.3d 219, 225 (4th Cir. 2020), *rev'd on other grounds*, 2 F.4th 330 (4th Cir. 2021).

To qualify for a preliminary injunction under Fed. R. Civ. P. 65, a plaintiff bears the burden of satisfying four requirements. First, a plaintiff "must establish that he is likely to succeed on the merits[.]" *Winter*, 555 U.S. at 20. Although that standard does not require "a 'certainty of success,'" the plaintiff "must make a clear showing that he is likely to succeed at trial.'" *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (citation omitted). Even so, "a preliminary injunction does not follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits." *Benisek*, 138 S. Ct. at 1943-44 (citing *Winter*, 555 U.S. at 32). "Rather, a court must also consider whether the movant has shown 'that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Benisek*, 138 S. Ct. at 1943-44 (quoting *Winter*, 555 U.S. at 20, 129 S. Ct. 365); *see Leaders of a Beautiful Struggle*, 2 F.4th at 339; *Centro Tepeyac*, 722 F.3d at 188. But, in the context of a Fair Housing Act claim, courts have said that irreparable harm is presumed if the plaintiff demonstrates a likelihood of success on the merits. *See Ctr. for Social*

*Change, Inc. v. Morgan Prop. Mgmt. Co.*, JKB-19-0734, 2019 WL 1118066, at *1 (D. Md. Mar. 11, 2019) (collecting cases).

A preliminary injunction cannot issue absent a "clear showing" that all four requirements are satisfied. *Leaders*, 979 F.3d at 226; *Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013). And, the "'[p]laintiff bears the burden of establishing that each of these factors supports granting the injunction.'" *Direx Israel*, 952 F.2d at 812 (quoting *Tech. Publ'g Co. v. Lebhar-Friedman, Inc.*, 729 F.2d 1136, 1139 (7th Cir. 1984); *Shaffer v. Globe Prod, Inc.*, 721 F.2d 1121, 1123 (7th Cir. 1983)); *see Winter*, 555 U.S. at 22 (recognizing that because a preliminary injunction is "an extraordinary remedy," it "may only be awarded upon a clear showing that plaintiff is entitled to such relief"). Accordingly, a court need not address all four *Winter* factors if one or more factors is not satisfied. *Henderson ex rel. NLRB v. Bluefield Hosp. Co., LLC*, 902 F.3d 432, 439 (4th Cir. 2018).

## IV. Discussion

Considering the Rule 65 standard, I will deny the P.I. Motion. As the outset, I note that plaintiff is not consistent as to the relief he seeks. The P.I. Motion initially asks the Court to "stop any eviction attempted by the defendant." ECF 17 at 1. But, it later asks the Court to "block any and all evictions . . . that do not deal with a complete lack of rent payment, meaning rent not paid at all or a reasonable plan for such to be made." *Id*. at 8. These are distinct requests, and what plaintiff means in the second request is less than clear. *Cf.* Fed. R. Civ. P. 65(d)(1) (providing that any order granting an injunction must "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required").

Moreover, to the extent that plaintiff would like the Court to enjoin State court eviction proceedings, the Anti-Injunction Act, 28 U.S.C. § 2283, poses a serious barrier. This statute

provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2833. "The plain language of the Act clearly and unequivocally prohibits a federal court from granting 'an injunction to stay proceedings in a State court.'" *Denny's, Inc. v. Cake*, 364 F.3d 521, 529 (4th Cir. 2004) (quoting 28 U.S.C. § 2833).

"Since the Fair Housing Act is expressly enforceable in both state and federal courts, *see* 42 U.S.C. § 3613(a)(1)(A), no stay of a state action is required to secure its intended scope, and consequently the first exception to the Anti–Injunction Act is . . . inapplicable." *Sierra v. City of New York*, 528 F. Supp. 2d 465, 468 (S.D.N.Y. 2008) (citing cases). And, judges in this District have applied the Anti-Injunction Act to deny requests for injunctions against eviction proceedings in cases lodging FHA claims. *See, e.g.*, *Want v. Shindle Properties, LLC*, PWG-18-2833, 2018 WL 5392521, at \*1-2 (D. Md. Oct. 29, 2018) (case alleging, *inter alia*, "violation of state and federal laws prohibiting discrimination in housing"); *Young-Bey v. Southern Mgmt. Corp., Inc.*, TDC-18-2331, 2018 WL 4922349, at \*1 (D. Md. Oct. 10, 2018) (case bringing FHA claim, among others).

To the extent the Anti-Injunction Act does not dispose of the P.I. Motion, it still fails. Fundamentally, the facts make clear that the P.I. Motion is moot. A case becomes moot when the issues presented are "'no longer live or the parties lack a legally cognizable interest in the outcome.'" *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)) (other internal citations omitted); *see also Grutzmacher v. Howard Cnty.*, 851 F.3d 332, 349 (4th Cir. 2017).

The Fourth Circuit has stated that "'mootness goes to the heart of the Article III jurisdiction of the courts.'" *Castendet-Lewis v. Sessions*, 855 F.3d 253, 260 (4th Cir. 2017) (quoting *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002)). "'The inability of the federal judiciary to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.'" *United States v. Hardy*, 545 F.3d 280, 283 (4th Cir. 2008) (quoting *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974)); *see also Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted).

"Because 'past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects,' a plaintiff seeking 'declaratory or injunctive relief . . . must establish an ongoing or future injury in fact.'" *Davison v. Randall*, 912 F.3d 666, 677 (4th Cir. 2019) (quoting *Kenny v. Wilson*, 885 F.3d 280, 287-88 (4th Cir. 2018)) (alteration here); *see also Los Angeles v. Lyons*, 461 U.S. 95, 105-110 (1983) (past injury confers standing for damages, but does not confer standing for prospective injunctive relief).

Here, the P.I. Motion seeks to prevent plaintiff's eviction from the property owned by defendant. But, defendant moved out of the property in late September 2021, independent of any eviction proceedings. *See* ECF 46 (September 24, 2021, change of address notification); ECF 54 at 9 (defendant notes that plaintiff "voluntarily vacated the premises on September 29, 2021");[4] ECF 59 at 1 (filing of October 14, 2021, in which plaintiff refers to his "new place"). Indeed, public filings reflect that a breach of lease action filed by defendant against plaintiff in the District

---

[4] The text of defendant's brief (ECF 54 at 9) states that "Defendant voluntarily vacated the premises," but in context, this is clearly a typographical error.

Court for Baltimore City was dismissed on December 6, 2021, because "tenant has vacated the premises." Docket, *Corso v. Stemmons*, Case No. 010100165742021 (Balt. City Dist. Ct.).[5] Because plaintiff is no longer residing at the property, there can be no eviction proceedings against him. Therefore, the P.I. Motion is moot.

Moreover, I am not persuaded that plaintiff has met his burden to establish a likelihood of success on the merits. Although plaintiff has made many allegations in this case, his P.I. Motion focuses on his summer 2021 dispute with defendant as to his rent payment. The FHA prohibits discrimination in rental housing or "in the provision of services or facilities in connection therewith" on the basis of race, color, religion, sex, national origin, familial status, or disability. 42 U.S.C. §§ 3604(a), (b). And, the FHA makes it unlawful "to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." *Id*. § 3604(f)(1). The statute defines discrimination to include "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." *Id*. § 3604(f)(3)(B).[6]

The Fourth Circuit has applied the methods of proof used in employment discrimination law—that is, direct evidence of discrimination or the framework articulated in *McDonnell Douglas*

---

[5] *See* https://casesearch.courts.state.md.us/casesearch/. I may take judicial notice of matters of public record such as docket entries, pleadings, and papers in other cases. *See* Fed. R. Evid. 201.

[6] Plaintiff cites the ADA in his Complaint, although not in the P.I. Motion. Regardless, the ADA does not apply to private residential properties. *See, e.g.*, *Want*, 2018 WL 5392521, at *5 (finding that any ADA claim in the context of a private apartment complex is subject to dismissal); *Hardaway v. Equity Residential Servs., LLC*, DKC-13-0149, 2015 WL 858086, at *5 (D. Md. Feb. 26, 2015) (concluding that defendant's apartment complex did not fall under the ADA); *Reid v. Zackenbaum*, No. 05–CV–1569 (FB), 2005 WL 1993394, at *12-13 (E.D.N.Y. Aug. 17, 2005) ("Because [the plaintiff] is alleging discrimination in connection with a place of residence, he fails to state a claim that is subject to the ADA under the public accommodation provision of that act.").

*Corp. v. Green*, 411 U.S. 792 (1973)—to the FHA context.  *See, e.g.*, *Corey v. Sec'y, U.S. Dep't of Housing and Urban Dev. ex rel. Walker*, 719 F.3d 322, 325 (4th Cir. 2013); *Pinchback v. Armistead Homes*, 907 F.2d 1447, 1451 (4th Cir. 1990).

To be sure, one of defendant's emails mentioned plaintiff's "severe PTSD symptoms [and] admitted mental instability."  ECF 17 at 11.  On the whole, however, the record reflects the development of an acrimonious relationship between plaintiff and defendant, driven by a variety of mutual frustrations.  In this context, when plaintiff sought to pay his rent in cash, which necessitated personal interaction with defendant, Corso insisted instead on electronic payment of the rent.  She told plaintiff: "Due to the many upsetting arguments and heated debates you and I have had in our tenant/landlord relationship, I will accept only electronically documented funds and the amount must be in full.  I am no longer comfortable making personal physical contact with you."  *Id*. at 3.  In a second email, she explained why it was "not acceptable for [plaintiff] to bring cash to [her] house," restating her concerns with plaintiff's apparent "gaslighting, threats, and false accusations," as well as mentioning the PTSD symptoms.  *Id*. at 11.  However, plaintiff admits that defendant later offered to meet him at a bank so he could pay in cash.  ECF 31 at 21.

On the basis of this limited record, and in the context of a motion for preliminary injunction, plaintiff has not demonstrated that "'he is likely to succeed at trial'" on his FHA claim.  *Di Biase*, 872 F.3d at 230  (citation omitted).

### V. Conclusion

For the reasons stated above, I shall deny the P.I. Motion.

An Order follows.

Date:   February 4, 2022                                    ___/s/_____
                                                            Ellen L. Hollander
                                                            United States District Judge

11